### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**RICHARD L. BYRD,**

|  |  |  |
|---|---|---|
| **Plaintiff** | : | |
| | : | **CIVIL ACTION FILE** |
| **vs** | : | |
| | : | **NO. 1:22-cv-01457-SDG-RGV** |
| **THE GWINNETT COUNTY** | : | |
| **SCHOOL DISTRICT** | : | |
| **Defendant** | | |

### PLAINTIFF'S STATEMENTS OF UNDISPUTED MATERIAL FACTS

COMES NOW Richard L. Byrd, Plaintiff in the above entitled and captioned matter, who submits his Statements of Undisputed Material Facts as follows:

1.    Plaintiff worked continuously at the Defendant's Instructional Support Center ("ISC") facilities in Suwanee, Georgia from the time that he became the Facilities managers until his employment ended on September 3, 2021 (Ex.1 at ¶1).

2    Terry Oliver and Grady Brown served as, respectively, the Head Custodian and the Assistant Head Custodian for the School District (see the attached Ex.1 at ¶ 4).

3.    The Plaintiff reported to Jorge Gomez, the Executive Director for Administration and Policy for most of his tenure with the School District, including 2021, while he served as the Facilities Manager (see the attached Ex.1 at  5).

4.     Also working at the ISC facilities were other supervisors who served in a similar role as that of a Director. Among such individuals who were the Plaintiff's counterparts during the time of his employment were the following Directors: Steve Jaggears, James Appleton, Laura Nurse, Glenda Ostrander, Mary Barbee, Matthew Mills, Kevin Kriews, Ken Yant, Patrice Pendergrast, and and a Director in the Foreign Languages Department referred to herein as "VJ"(see the attached Exhibit 1 at ¶6 ).

5.     At all times relevant to the issues in these proceedings, he School District's Human Resources Department was under the direction of Dr. Monica Batiste, who served as Associate Superintendent of Human Resources and Talent Management from 2020-2022 (Batiste depo.pp.11-12).

6.     Complaints by employees concerning their performance evaluations are specifically prohibited from the School District's internal complaints procedure  (Byrd depo.Ex.5, "Definitions, 'Complaint' and "Section 2, Procedures, '¶1'"and Batiste depo., p. 204).

7.     Despite such prohibition, Associate Superintendent Monica Batiste subjected  a an employee who shall be referred to herein as "WD," an African American Director, to such an investigation from employees using the District's internal complaints procedure, and was forced to change the performance evaluations of her subordinate employees (Batiste depo. pp.117-119).

8.     There is no record any Caucasian Director or Manager being subjected to an investigation regarding his or her issuance of performance evaluations to subordinate employees while Monica Batiste served as an Associated Director (Batiste depo.pp.118-119).

9.     When subordinate employees filed a complaint against a Caucasian Director concerning inappropriate conduct in the workplace, such complaints by employees were rejected by Associate Superintendent Monica Batiste, and the Caucasian Director was not subjected to any adverse action, including any diminution of his authority or change in his working conditions (Batiste depo., pp. 118-119 and see the attached see the attached Ex.5 at GSD000799-800).

10.     In March/April of 2021, there began to be an issue about how security employees David Larkins and Aaron Maharaj would be compensated for working on weekends when necessary to support facilities events which took place at the ISC Suwanee, Georgia location (see the attached Ex. 2 at ¶ 5).

11.     In May of 2021, Richard Byrd, at the instruction of Jorge Gomez, communicated to School District staff that it would be appropriate to change the schedule of security employees, including David Larkins and Aaron Maharaj to work only 40 hours a week, including two (2) hours on the weekend to avoid requiring these employees to work uncompensated hours of overtime on the weekend, but have security in place on weekend to support the School District events (see the attached Ex. 2 at ¶ 5).

12.     Jorge Gomez, Dr. Monica Batiste, and other School District officials were aware of the upcoming schedule change announced by Richard Byrd (see the attached Ex. 2 at ¶ 7).

13.     In June of 2021, the Plaintiff, as was his normal course of action on an annual basis, issued, or requested to be issued, performance evaluations to subordinate employees who served under his supervision. Among such employees were four (4) African American males (Ex. 1 at ¶ 9).

14.     The Plaintiff evaluated each employee based upon the criterion for their annual "Classified Job Description Assessment"("Performance Evaluation") provided for each respective position, in accordance with his authority to do so (Gomez depo.p.85 and Batiste depo.p. 80).

15.     For some months prior to such performance evaluations, Plaintiff had attempted to correct ongoing failures in performance of some of the employees who reported to him directly(Ex. 1 at ¶ 10, Byrd depo.at pp.90-93, 183, 211 and Batiste depo.Exs. 2 and 7).

16.     Based upon such employees less than full performance in certain categories of performance, the Plaintiff adjudged on these employees' performance evaluation that these areas of performance required improvement (Batiste depo.Ex.2, and Byrd depo.at pp. 93 and 173, and see the attached Ex. 1 at ¶11).

17.    Unbeknownst to the Plaintiff, the subordinate employees who he issued

performance evaluations to and indicated area which needed improvement contacted the

School District's HR department on or around June 15, 2021(Byrd depo.p.94).

On or about June 15, 2021, I was told by Human Resources official, Michelle Burton

that subordinate employees filed complaints against me.

18.    At no point was the Plaintiff ever informed of the specific allegations made

against him by subordinate employees (see the attached Ex.1 at ¶13).

19.    Plaintiff was told that employees Aarron Maharaj, David Larkins, and Terry

Oliver, and  Grady Brown filed complaints against him regarding their performance

evaluation, and that he was being investigated for changing the work schedule of

employees  to comply with federal Fair Labor Standards Act requirements of either

working 40 hours per week or being compensated for overtime for working more than

40 hours per week (see the attached Ex.1 at ¶14).

20.    Plaintiff was provided no more details regarding any other specifics or any other

allegations (see the attached Ex.1 at ¶15).

21.    The School District did not authorize payment for working more than 40 hours per

week in 2021 for the non-exempt employees who worked under my supervision (see the

attached Ex.1 at ¶16).

22.     In May of 2021, the School District hired a contracting company called Lacosta to provide employees to perform janitorial services at the ISC facilities (see the attached Ex.1 at ¶17).

23.     Shortly, thereafter, in late June of 2021, the Plaintiff was contacted by employees hired by Lacosta, and such employees reported to the Plaintiff that a female contract hired employee (identified herein simply a "LM") was being subjected to unwelcome conduct of a sexual nature by a subordinate employee/ Supervisor who worked in the Facilities Department, Grady Brown (Batiste depo., p.37).

24.     Plaintiff received from the School District's contract hired employee LM and other contract hired employees the report of inappropriate conduct in the workplace by this School District Assistant Head Custodian, Grady Brown(Id.). Brown supervised LM (Brown depo.p.66).

25.     At the end of the workday, Plaintiff received a report from LM's contract manager that Grady Brown was engaged in potentially inappropriate conduct of involving her status as female on or about June 22, 2021 (Batiste depo.Ex.8, p.6 and see the attached Ex. 1 at ¶19).

26.     School District policy prohibits sexual harassment in the workplace that substantially interferes with any individual's work performance, or which creates an intimidating,  hostile, or offensive work environment (Batiste depo.Ex.P-1 at p.25).

27.   After obtaining additional detailed information from LM's contract manager regarding these allegation on June 24, 2021, Plaintiff immediately upon learning of these reports, assured LM's contract manager that he would request that the School District's HR department address the concerns which had been brought to him (Batiste depo. Exs. 8 and 9, and see the attached Ex. 1 at ¶23).

28.   Immediately thereafter, on June 25, 2021, the Plaintiff reported to his manager, Jorge Gomez and to the School District's Human Resources Department  representatives Michelle Burton and Monica Batiste the disturbing allegations of sexual harassment which were reported to him (Batiste depo.p.140).

29.   Upon learning of the allegations of LM and disturbing details reported to him, the Plaintiff took immediate action to attempt to ensure that her allegations were addressed in accordance with School District policy, as well as, in accordance with the law (Byrd depo.pp.127, 1238-140, 147-148, Gomez depo. p.127, Batiste depo.pp.164-166, and Batiste depo. Exhibits 8 and 9).

30.   To ensure that LM's claims of sexual harassment were addressed, Plaintiff took several actions – beginning with reporting to his direct supervisor and Human Resources what he deemed serious allegations of misconduct and violations of law by his subordinate employees, most specifically Assistant Head Custodian Grady Brown, on June 25, 2021 (Byrd depo.p.127, Batiste depo.p.140 and Gomez depo.p.127).

31.   Grady Brown supervised LM (Brown depo.p.66).

32.    Plaintiff reported to HR Associate Superintendent Michelle Batiste and Michelle Burton that he would like to HR to properly address LM's reports of sexual harassment (Batiste depo.Ex.P-1 at p.20 and Batiste depo.Ex.P-7).

33.    Plaintiff made such request of Michelle Burton and Monica Batiste on June 25, 2021 and advised that he had started to look into these allegations (Batiste depo.pp.140 and 199,  Byrd depo.pp.145-146, and Batiste depo. Ex.8, and see the attached Ex. 1 at ¶ 25).

34.    School District officials, including Monica Batiste and Michelle Burton, immediately treated the Plaintiff with hostility in the meeting after he reported LM's allegations to him (see the attached Ex. 1 at ¶ 28).

35.    In the days following his report to Jorge Gomez and to the School District's Human Resources Department of the allegations of sexual harassment which were brought to his attention, and following the Plaintiff's communication to his manager and to HR representatives of his request that the School District's HR department follow up on the allegations of sexual harassment made concerning LM, the School District refused to dismiss the subordinate employee's complaints regarding their performance evaluation, though the employer's policy requires that that no such complaints may be the subject of an Internal investigation through its complaint procedure (Byrd depo.Ex.5, "Definitions, 'Complaint' and "Section 2, Procedures, '¶1'").

36.    A few days following his reporting the allegations of sexual harassment by School District employees and requesting that the School District address these concerns, the Plaintiff was advised, on June 29, 2021, by his Manager Jorge Gomez that his actions have consequences, and on the same date, the School District advised Plaintiff's subordinate employee, David Larkins, that the performance evaluation issued to him (Larkins) by the Plaintiff would be rescinded, along with a performance Memo of Record Plaintiff issued to him in March of 2021 – though the School District had not provided the Plaintiff the opportunity to respond to the complaints of Larkins( Batiste depo.ppp. 132-133, Batiste depo.Ex 14, Byrd depo.p.79, Gomez depo. pp.48-49, Byrd depo.pp.179-181and 201, and see the  attached Ex.1 at ¶ 28a).

37.    The Defendant School District,  acting through Associate Superintendent Monica Batiste and her direct report Michelle Burton, advised the Plaintiff on July 1, 2021 that his authority to issue a performance evaluation to David Larkins, and a memo which he had issued to him months earlier in March of 2021, was being rescinded (Byrd depo.pp. 201-202 , Batiste depo.Ex.14, and see the attached Ex.1 at ¶ 28a.).

38.    In the weeks after he first reported to his manager and to the School District's HR department the allegations of sexual harassment made by LM, the Plaintiff became aware that the Contracting Company had continuing concerns about the Head Custodian and Associate Head Custodian's inappropriate interactions with LM, and Plaintiff

expressed such concerns to the School District, including his manager and Assoc. Supt. Batiste (Batiste depo.Ex.9 and Byrd depo.p.135 and 137-139).

39.     Soon after the Plaintiff received the initial report of possible inappropriate behavior involving LM and Grady Brown and Brown, a Lacosta contract management representative and  LM  met with the Plaintiff to discuss LM's concerns (see the attached Exhibit 2 at nos.8-10 and Batiste depo. Exhibits 3 and 8).

40.     During her meeting with the Plaintiff, LM was visibly shaken (see the attached Exhibit 2 at nos. 8-10).

41.     In the meeting with the Plaintiff, LM reported that School District Asst. Head Custodian/supervisor, Grady Brown, attempted to block her from leaving a room, stated to LM how much he liked her, and that he followed her and was touching her as she attempted  to leave out of a room, (Byrd depo. pp. 132-134, see the attached Ex. 2 at ¶11 and Batiste depo.ex. 8 ).

42.     As of July 12, 2021, the School District was also advised that LM reported that, among other alarming acts, Grady Brown smacked his lips at her when she was alone with him in the workplace, that he told her "you would be good for me," that he tries to get her away from everyone, and that he searches for her (Byrd depo.pp. 127-128, Batiste depo.pp.164-166, and Batiste depo.Exhibits 3 and 8).

43.     On or about July 9, 2021, having still received no response from his Manager or HR as to what, if anything was being done to follow the law and School District policies

and procedures to protect LM from further potential harassment by Grady Brown and Terry Oliver, the Plaintiff consented to Lacosta's request to separate LM from as much communication and contact with Brown and Oliver as possible, while not singling out LM as an employee who made sexual harassment allegations, by directing that Grady Brown and Terry Oliver communicate all School District requests and directives through the onsite Lacosta Manager, James Leach (Batiste depo.Ex.9 [p.2]and Gomez depo.p.187). Such directive was communicated to School District staff on July 8, 2021 (Id.).

44.    Plaintiff, as Facilities Manager, had the authority to make such directives to his staff and the contracting company (Gomez depo., pp. 80 and 53-154).

45.    On the same date that Plaintiff directed Grady Brown and Terry Oliver not to communicate directly with Lacosta staff, and to contact such staff through the contractor's manager, James Leach, Brown and Oliver disregarded Plaintiff's directive and followed LM into a custodian closet (Batiste depo.Ex.9 and Gomez depo. p. 187).

46.    Brown and Oliver's failure to follow Plaintiff's directive was reported to him (Plaintiff), and Plaintiff then requested that both Assistant Superintendent Monica Batiste and Jorge Gomez review the videotape of Grady Brown and Terry Oliver continuing to make contact with LM in violation of such directive (Batiste depo.Ex.9 and Byrd depo.pp.140-141).

46.     The Plaintiff received no response from Jorge Gomez or Monica Batiste as to what should be done to protect LM from further potential sexual harassment by Grady Brown and Terry Oliver, and, receiving no response from School District officials as to how LM could be protected, granted to LM permission to take paid leave from reporting to work – with Brown and Oliver failing to follow his direction to stay away from her and School District officials not responding to what he should do (Batiste depo.p. 203 and Byrd depo. pp.134 and 140-14).

47.     As the Plaintiff pushed for assistance to protect LM from the continuing acts of sexual harassment in the workplace by his subordinate employees, his calls to redress such acts were received with non-responses and responses that he should not continue to try to protect LM (see the attached Ex. 9 at pp.4-5, Batiste depo.p.203, Gomez depo., pp. 200-201, and see the attached Ex.1 at ¶¶35 and 60).

48.      Monica Batiste told the Plaintiff that the school district was not responsible for LM - stating to the Plaintiff "But you gave me a statement, she needed to go back when she comes to you because she is a LaCosta employee, you need to send her back to LaCosta." (see the attached Ex. 9 at pp.4-5).

49.     When Plaintiff told Batiste that he felt he needed to protect the young lady (from School District's employees' sexual harassment of LM), Batiste told the Plaintiff that it was not his job to protect LM (see the attached Ex. 9 at p.4).

50.     Monica Batiste told the Plaintiff that he could be issued a Letter of Direction for taking a statement from LM detailing her allegations of sexual harassment by School District supervisor Grady Brown (Byrd depo.p.136).

51.     Plaintiff's manager, Jorge Gomez, and HR Direct or and Superintendent Batiste ignored Plaintiff's requests to meet with LM or to give him direction, but in fact told Plaintiff that the School District does not meet with contract employees(Byrd depo.pp.134, 194, 213-214,  Gomez depo.p.196, and Batiste depo.pp. 173-174).

52.     Plaintiff's manager, Jorge Gomez, also rescinded Plaintiff's directive that School District employees communicate and contact Lacosta hired employees through their on-site manager on July 29, 2021 (Gomez depo.Ex.18).

53.     The School District's contractor, Lacosta, found that Assistant Superintendent Batiste did not respond to Lacosta's President's request that the School District take action to prevent future sexual harassment by Grady Brown and Terry Oliver (Batiste depo.Ex.6 and see the attached Ex.3 at ¶ 5).

54.     Monica Batiste did not return Lacosta's President's phone call asking for help to stop the sexual harassment of LM (see the attached Ex.3 at ¶ 5 and Batiste depo.at p.177).

55.     Lacosta turned over the results of its own investigation of the allegations of harassment of LM by School District employees to Monica Batiste; however, Batiste did not respond to Lacosta's continued request that the School District stop the sexual

harassment of its employees (see the attached Ex.3 at ¶ 4, Batiste depo.p.177, and Batiste depo.Ex.3 at pp.1-3).

56.    LM then resigned her employment with Lacosta and her assigned work location at the School District's facility, and LM's mother called to complain that her daughter was not being protected in the workplace (Batiste depo.Ex.6).

57.    Lacosta requested again that the School District remove its supervisors from supervising LM, and notified the School District that its employees were being subjected to inappropriate and/or harassing and retaliatory behavior by School District supervisors (Batiste depo.Ex.6).

58.    School District supervisor Grady Brown testified that he was never investigated by the School District for inappropriate conduct allegations, that he was never told not to come in contact with LM, and that he was never directed to change his behavior in the workplace towards LM, nor was he disciplined by the School District (Brown depo.pp.79-81).

59.    The School District never attempted to contact LM to interview her (Batiste depo.p. 148).

60.    No investigation of Grady Brown based upon the allegations of LM ever took place (Brown depo.pp.79-81and Batiste depo.pp.16-148).

61.    The only attempt to address LM's allegations of sexual harassment were made by the Plaintiff  - who was then told that he should not have taken a statement from LM,

that  the School District does not talk with contractors, and that it was not his job to protect LM (see the attached Ex.9 at p. 4).

62.     Plaintiff's manager, Jorge Gomez, told him that he never wanted to hear him speak about the School District failing to protect LM again, and that he (Plaintiff) had to decide to whom he was loyal (See the attached Ex.2 at ¶ 21).

63.     Plaintiff was not provided all the complaints and evidence which set forth the complaints of subordinate employees who the Defendant's HR department purportedly based their investigation of him upon (Batiste depo.pp.132-133).

64.     Plaintiff's manager also rescinded his directive that communications and interactions between the School District's Head Custodian and the Associate Head Custodian and contract hired employees be made through the contractor's onsite manager  - which was requested by the Contractor and implemented to protect LM until her concerns of sexual harassment by School District staff could be addressed (Gomez depo.pp.220-22, Brown depo.p.81, and see the attached Ex.1 at ¶ 29).

65.     In addition, on or about August 4, 2021, as Plaintiff attempted to protect LM, Associate Supt. Batiste and his manager took action to remove Plaintiff's authority over his subordinate employees without advising him of why such authority was taken from him (Gomez depo. Ex.18, see the attached Ex.1 at  ¶¶37 and 39).

66.     As the Plaintiff continued with his pleas for the School District to protect LM and to take action to protect other female employees Plaintiff discovered that the previous

Contracting company ("BMS") had concerns that the School District's Head Custodian (Terry Oliver) had treated females more adversely than males.

67.    During the week of  August 8, 2021, Plaintiff informed his supervisor, Jorge Gomez, that BMS had concerns about the disparate treatment of female contract hired employees by Terry Oliver, and, within days afterwards, on or about  August 24, 2021, for the first time in his career with the School District, the Plaintiff's performance was suddenly determined by Gomez to be less than satisfactory (Batiste depo.Ex.21, Gomez depo.p.31, and see the attached Ex.1 at ¶46).

68.    Additionally, on August 24, 2021, Plaintiff received a Letter of Direction from Jorge Gomez directing him to reverse his issued performance evaluations of employees and to refrain from retaliating against employees – without being advised of how he had subjected any employee to retaliation (Gomez depo. Exhibit 21 and see the attached Ex.1 at ¶¶ 47 and 48 and Batiste depo.pp.132-133).

69.    On or about August 8, 2021,when the Plaintiff told Jorge Gomez that he wanted to discuss reports of other acts of discrimination in the workplace and how to prevent future sexual discrimination in the workplace by School District staff, Gomez told him that he did not want to discuss this (Beard Aff.at ¶¶ 26-27 and see the attached Exhibit 1 at ¶ 45).

70.    Plaintiff authorized the issuance of a Letter of Direction to a subordinate employee,Grady Brown, on or about June  8, 2021 based upon Brown's failure to adhere

to required performance standards, and Jorge Gomez reviewed this Grady Brown Letter of Direction and found no reason to to reverse such Letter of Direction, and testified that "I don't think that there's any dispute about the appropriateness of the letter of direction." (Gomez depo.p.97, Gomez depo.Ex.8 at p.3, Gomez depo.Ex.9, and Gomez depo.Ex. 4).

71.    On August 24, 2021, days after Plaintiff asked Gomez to address the issue brought to light by the new Contractor regarding Terry Oliver's possible discrimination against female employees and Gomez told Plaintiff that he did not want to discuss this, and days after the Plaintiff reported that he believed the School District failed to protect LM from sexual harassment in the workplace by its supervisors, Jorge Gomez changed course and ordered Plaintiff to rescind the Letter of Direction to Grady Brown, and to refrain from unsubstantiated acts of retaliation against subordinate employees (Batiste depo.pp. 44, 101-102, 206-208, Batiste depo.Ex.21, and see the attached Ex.1 at ¶ ¶47-48).

72.    According to his own testimony, Jorge Gomez was told by the Plaintiff, prior to June 8, 2021, that he would place in employee David Larkins' performance evaluation that it was unacceptable to not follow his (Plaintiff's) instruction to to obtain items for a facility employee retirement celebration, and Gomez did not tell Plaintiff that he could not do so (Gomez depo.pp.48-49 ).

73.    In the days following Plaintiff's telling Jorge Gomez that he believed that the School District had failed LM, and Plaintiff telling Jorge Gomez that he wanted to

address the charges of discrimination made by the previous contractor(BMS), and Jorge Gomez telling Plaintiff that he (Plaintiff) needed to, respectively, decide who he owed his loyalty to, and that he did not want to discuss this, on August 24, 2021, Jorge Gomez suddenly reversed course and issued to Plaintiff a Letter of Direction that the performance evaluation of Larkins and three (3) other employees would need to be rescinded (Beard Affidavit at ¶¶ 26 and 27, Gomez depo.Ex.21, and see the attached Ex.1 at ¶¶43-48).

74.    HR Associate Superintendent Monica Batiste approved Plaintiff's issuing to Grady Brown a Letter of Direction prior to it being issued, but Batiste reversed course and directed that Plaintiff be issued a Letter of Direction rescinding his supervisory authority once Plaintiff reported LM" s allegations of sexual harassment, insisted on trying to help protect LM from sexual harassment, took LM's statement, and Batiste told him that his job was to send LM back to Lacosta (Byrd depo.p.90, Gomez depo.p.244, and see attached Ex.9 at p.5).

75.    According to HR Associate Superintendent Monica Batiste, the Plaintiff started an investigation of LM's claims of sexual harassment by School District employees who reported to him, and Batiste did not want Plaintiff to look into such allegations – telling him (about LM) that "She needed to go back (to Lacosta)," and "Your job is to supervise and report any misdoings and wrongdoings."(Batiste depo.p.140 and see the attached Ex.9 at pp. 4-5).

76.     The School District's HR department never disciplined Grady Brown as a result of

LM's allegations of sexual harassment, and Brown was never questioned about LM's

allegations (Brown depo.pp.76 and 79-80).

77.     HR Associate Superintendent Batiste concedes that Grady Brown's performance

issues occurred on previous years and continued into 2021 and that there is nothing

wrong with a supervisor holding an employee accountable for continuing performance

issues in a current year performance evaluation (Batiste depo.pp.112-113).

78.     HR Associate Superintendent Monica Batiste testified that it is not a violation the

School District's rules or procedures not utilize progressive discipline (Batiste

depo.p.68).

79.     HR Associate Superintendent Monica Batiste approved the finding that there no

retaliation by the Plaintiff regarding any of the four employees' complaints which the

School District concluded merited Plaintiff being issued a Letter of Direction on August

24, 2021, with the alleged exception of David Larkins (Batiste depo.p.206).

80.     HR Associate Superintendent Monica Batiste testified that David Larkins

participated in no protected activity and that retaliation that the School District considers

impermissible is legal retaliation (Batiste depo. pp. 44 and 206).

81.     HR Associate Superintendent Monica Batiste approved the finding that David

Larkins was the victim of retaliation which merited directing Plaintiff to rescind his

performance evaluation, though Larkins engaged in no protected activity (Batiste depo.pp.207-208).

82.     HR Associate Superintendent Monica Batiste testified that employee may not file a complaint regarding their performance evaluation, but that with regard to the Plaintiff, such complaints were allowed because employees may challenge whether the correct process was followed (Batiste depo.p.204); yet, Monica Batiste also testified that the problem with Plaintiff's evaluation of the four (4) employees who lodged a complaint against him was not procedure, but judgment (Batiste depo.p.103).

83.     Faced with the School District's refusal to address the Plaintiff's request to redress the continuing acts of sexual discrimination by employees who reported to him, based upon the School District's violation of the law and its own practices and procedures, and based upon the School District's rescission of his authority to supervise employees, and statements to him that he could be punished for taking a statement from LM regarding her sexual harassment allegations, the Plaintiff was forced to resign his employment effective September 3, 2021 based upon illegal and intolerable conditions (see the attached Ex.1 at ¶2).

        Respectfully submitted this 19th day of April, 2023.
                                J. TAYLOR AND ASSOCIATES, LLC

                                /s/Jacqueline Taylor
                                Jacqueline K. Taylor, Georgia Bar No. 700251
                                1870 The Exchange, Suite 200
                                Atlanta, Georgia 30339
                                 (770)951-7077(phone)

**IN THE UNITED  STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**RICHARD L. BYRD,**

|  |  |  |
|---|---|---|
| **Plaintiff** | : | |
| | : | **CIVIL ACTION FILE** |
| **vs** | : | |
| | : | **NO. 1:22-cv-01457-SDG-RGV** |
| **THE GWINNETT COUNTY** | : | |
| **SCHOOL DISTRICT** | : | |
| | : | |
| **Defendant** | | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing pleading to the Clerk of the Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants, and thereby counsel for the Defendant as follows:

Elizabeth F. Kinsinger
PEREIRA, KIRBY, KINSINGER & NGUYEN, LLP
P.O. Drawer 1250
Lawrenceville, GA 30046

Dated this 19th day of April, 2023.

/s Jacqueline Taylor_____
Jacqueline K. Taylor