IN THE UNITED  STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICHARD L. BYRD,                           :

   Plaintiff                               :

                               :        CIVIL ACTION FILE

   vs                                      :

                               :        NO. 1:22-cv-01457-SDG-RGV

THE GWINNETT COUNTY                        :
SCHOOL DISTRICT                            :

        Defendant

## PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENTS OF UNDISPUTED MATERIAL FACTS

COMES NOW Richard L. Byrd, Plaintiff in the above entitled and captioned matter, who submits his Responses to the Defendant's Statements of Undisputed Material Facts as follows:

1. Defendant Gwinnett County School District ("GCSD") is a political subdivision of the state of Georgia. O.C.G.A. § 28-5-48(4).

Response: Admitted.

2. The Board sets policies that govern the operations of GCSD. O.C.G.A. § 20- 2-59.

Response: Admitted.

3. The Division of Human Resources and Talent Management ("HR Division") oversees the employment needs of GCSD, including the Departments of staffing, internal

resolution and compliance, leadership development, HR assistance, and HR systems. (Ex. B Batiste 14:7-15:19).

Response: Admitted.

4. The HR division at all times relevant to this litigation was operated by Associate Superintendent and Chief Human Resources Officer Dr. Monica Batiste. (Ex. B Batiste 11:24-12:1).

Response: Admitted.

5. The Department of Internal Resolution and Compliance within the HR Division is responsible for communicating, monitoring, and enforcing Board policies and procedures that prohibit any form of discrimination based on race, color, religion, sex, age, national origin, or disability, and inappropriate or offensive conduct, investigating and resolving any claims of discrimination or retaliation, and overseeing processes for accommodations requests based on disability or religious need. (Ex. B Batiste 42:19-43:7).

Response: Denied. It is the responsibility of all school district officials to address allegations of sexual harassment in the workplace (Gomez depo.p.200 and Batiste depo.Ex.P-1 at p. 25).

6. GCSD policy GAAA prohibits impermissible discrimination including discrimination on the basis of sex, race, color, or disability; Plaintiff was aware of this policy. (Ex. A Plaintiff 41:4-23, ex. 6).

Response: Admitted.

7. The GCSD has an employee grievance process, found in Policy GAE, that provides an opportunity for employees to complain if they believe that they have been mistreated on account of their sex, race, color, or disability or subjected to retaliation or that they have been mistreated under some law or policy governing their employment relationship; Plaintiff was aware of this grievance process. (Ex. A Plaintiff 30:18-31:3, 31:18-21 ex. 4, 5)

Response: Denied. The Defendant's policy does not provide an opportunity for employees to complain through the grievance process complaints regarding allegations which occurred more than ten (10) days prior to such complaint, or based upon retaliation other than legal retaliation under Title VII or Title IX  (Batiste depo.pp.44, 61, 100-101, and 206 and Byrd depo.Ex.5, and Batiste depo., p. 204).

8. GCSD Policy GAE also allows employees to complain directly to the GCSD's Director of Equity and Compliance, whose name and phone number are posted throughout GCSD buildings; Plaintiff was aware of this process. (Ex. A Plaintiff 30:18-31:3, 31:18-21 ex. 4, 5)

Response: Objection. The Defendant has presented no facts which support its allegation that there is a "GCSD Policy GAE." Plaintiff admits that employees may file a complaint with the Defendant's Director of Equity and Compliance, and that he was

aware of this. Denied that the Director of Equity and Compliance's name and phone number is posted throughout the GCSD building(see the attached Ex. 1 at ¶ 53).

9. Plaintiff never filed a written complaint or grievance regarding himself utilizing Policy GAE during his employment with the GCSD. (Ex. A Plaintiff 31:18- 32:3)

Response: Objection: The Defendant has presented no facts which support its allegation that there is a GCSD Policy GAE. This allegation is also Denied. Plaintiff filed a complaint to GCSD regarding himself, in a similar manner as that which was utilized by subordinate employees who filed complaints by phone or by email to an official with GCSD HR (Batiste depo.Ex.7 and Batiste depo.Ex.15).

10. Plaintiff did assist a former employee, Rodney Miller, with filing a grievance and guide him through the process with internal resolution, resulting in the employee about whom Mr. Miller complained for offensive language being terminated. (Ex. A Plaintiff 32:4-33:5)

Response: Admitted.

11. Plaintiff received GCSD policies and procedures and confirmed that he had read such policies and procedures and to obtain clarification from a supervisor if he did not understand a policy, procedure or directive. (Ex. A Plaintiff 28:11-30:17, ex. 4)

Response: Objection: The Defendant has presented no facts which support this allegation. In 2006, Plaintiff did receive six specific GCSD policies and procedures, and

has reviewed the GCSD's Employee Handbook (Byrd depo.pp. 28-29). Plaintiff did not

testify that he received "GCSD policies and procedures." Id.

12. All GCSD policies and procedures are available online for employees to view, and

Plaintiff was aware that GCPS policies were on the GCPS website. (Ex. A  Plaintiff

30:1-17, ex. 4)

Response: Objection: The Defendant has not presented facts which supports this

allegation. Plaintiff testified that the was aware only of the GCSD Employee Handbook

being online(Byrd depo. pp. 28-29).

13. Plaintiff received training annually on topics such as sexual harassment,

discrimination, and reports of abuse towards students. (Ex. A Plaintiff 41:24-43:3)

Response: Admitted.

14. For individuals charged with conducting employee performance evaluations,

resources and training materials can be found in the Documenting Employee

Performance guide.(Ex. B Batiste 209:9-22, 210:19-211:3, ex. 19)

Denied. Such document was not available to the Plaintiff in 2021, and the Defendant has

produced any such document which existed in 2021 (See the attached Ex. 8 and see the

attached Ex.1 at ¶ 54).

15. Plaintiff understood that there were multiple avenues available to him if he had

questions regarding human resources matters, including accessing the Lotus Notes

database. (Ex. A Plaintiff 48:14-49:10)

Response: Denied that the Plaintiff understood that the Lotus Notes database was an avenue available to him if he had questions regarding human resources matters (Byrd depo.pp.48-49).

16. Plaintiff began his employment with GCSD in January of 2006. (Ex. A Plaintiff 18:22-24, 26:5-9)

Response: Admitted.

17. Plaintiff was employed as the ISC facility manager; his job duties included being in charge of the physical workings of the facility including the security department, mail room department, maintenance, and the custodial department. (Ex. A Plaintiff 18:13, 20:9-18)

Response: Admitted.

18. Plaintiff was typically evaluated by his supervisor, Jorge Gomez, via job description assessment performed most years that he worked for the School District. (Ex. A Plaintiff 25:6-9, 25:14-22)

Response: Admitted.

19. As a part of his duties as Facilities Manager at the Instructional Support Center, Plaintiff supervised the custodial department, security monitors, maintenance and the mail department. He also supervised his Administrative Assistant, Karoline Beard. (Ex. A Plaintiff 49:11-50:11)

Response: Admitted.

20. On March 16, 2021, Plaintiff instructed Karoline Beard to ask Security Monitor David Larkins to go to Publix to get a glue stick and some ribbon. (Ex. A Plaintiff 56:15-58:24, ex. 9)

Response: Admitted.

21. The position of Security Monitor was responsible for overseeing the safety and security of the ISC Facility, including monitoring the security cameras and access control into and out of the facility. (Ex. F Larkins ¶5; Ex. G Maharaj ¶5).

Denied. The position of Security Monitor was responsible for several areas of performance, including performing "other duties as assigned" such as retrieving needed supplies and items offsite for the Facilities Department and assisting with general School District and School District third party activities and functions (see the attached Ex. 1 at ¶ 55).

22. Plaintiff agrees that the Security Monitor's main job was to secure the facility grounds. (Ex. A Plaintiff 75:21-76:6)

Response: Admitted.

23. Mr. Larkins believed the request to pick up a glue stick and ribbon was a personal errand and outside the scope of his job duties and told Plaintiff this. (Ex. F Larkins ¶7-8; Ex. A Plaintiff 72:23-73:9, ex. 9)

Response: Denied. David Larkins stated that he could not believe that Plaintiff was asking him to take a school district vehicle to pick up the materials he was asked to pick

up, that this was not GCPS business, and that it was personal (Byrd depo. p. 73 and Gomez depo.pp.50-52).

24. Plaintiff became very upset with Larkins, ultimately yelling and cursing at him; he told Larkins that their relationship would change after this date. (Ex. F Larkins ¶8; Ex. H Oliver ¶7; Ex. I Plaintiff's ex. 67)

Response: Denied. Plaintiff did not yell or curse at Larkins. Plaintiff stated that he did not "give a s----" about an alleged contribution Mr. Larkins made to a retirement gift for an employee. Plaintiff told Larkins that he was refusing to perform a task which his Manager was requesting of him and which was a part of his duties (see the attached Ex. 1 at ¶ 57).

25. Plaintiff characterized the conversation with Larkins as "heated" (Ex. A Plaintiff 57:22)

Response: Admitted.

26. Plaintiff drafted a "Memo of Record" on that date which he sent to Larkins. (Ex. A Plaintiff 61:4-13, 66:17-19, ex. 9)

Response: Admitted.

27. Plaintiff also recorded the conversation with Larkins. (Ex. A Plaintiff 67:17- 20; Ex. 1 Plaintiff's ex. 67)

Response: Admitted.

28. On March 17, 2021 Plaintiff called a meeting with his direct subordinates including Larkins, Maharaj, Oliver, and Brown because he wanted "the team to know what the new management would be going forward." (Ex. A Plaintiff 81:25- 82:3)

Response: Admitted.

29. In the March 17, 2021 meeting, Plaintiff told his subordinate staff that he would be "removing the human perspective" from his management. (Ex. A Plaintiff 84:24-85:8, ex. 9)

Response: Admitted.

30. Plaintiff admits that some of his management decisions were unauthorized, unilaterally made, and not part of the Defendant's official policies. (Ex. A Plaintiff 86:15-25)

Response: Objection: The citation presented by the Defendant does not support this allegation. Plaintiff's authorization of lenience for subordinate employees was a practice followed by him and other managers, including Jorge Gomez, and within his authority, though not specifically set forth in any particular Board policy (see the attached Ex. 1 at ¶ 56). Plaintiff's supervision of his staff was within his responsibility and authority (Gomez depo.pp.206-207).

31. Larkins, Maharaj, Oliver, and Brown all believed Plaintiff's change in management style was related to his interaction with Larkins. Ex. C Brown 23:21- 23; Ex. F Larkins ¶9; Ex. H Oliver ¶8; Ex. G Maharaj ¶¶8-9).

Response: Plaintiff has no basis upon which to deny this statement.

32. Plaintiff admits that his change in management style related to his interaction with Larkins the day prior. (Ex. A Plaintiff 83:4-7)

Response: Admitted.

33. On June 8, 2021 Plaintiff issued Grady Brown a letter of direction; Terry Oliver, Brown's immediate supervisor was not notified of this letter of direction in advance or given an opportunity to provide input. (Ex. Plaintiff 90:22-91:2).

Response: Denied. Terry Oliver was notified of the letter of direction before he (Oliver) himself issued to Brown the Letter of Direction requested to be issued by the Plaintiff (Byrd depo.p.173 and Batiste depo.Ex.2 at p.3).

34. Plaintiff never told Mr. Oliver about his concerns regarding Brown or how Oliver managed Brown. (Ex. A Plaintiff 92:15-21)

Response. Admitted.

35. On June 9, 2021, Plaintiff conducted Terry Oliver's final performance review and for the first time, Oliver received negative ratings on his performance evaluation. (Ex. H Oliver ¶9)

Response: Admitted.

36. On June 9, 2021 Plaintiff conducted David Larkins' final performance review and for the first time he gave Larkins a rating of "unsatisfactory" and a rating of "needs

improvement" in the area of dependability. (Ex. F Larkins ¶10, ex. 1 GCSD000782; Ex. A Plaintiff 99:12-20, 102:12-14, ex. 13)

Response: Admitted.

37. Plaintiff indicated on Larkins June 9, 2021 evaluation the unsatisfactory rating was directly related to the March 16 incident. (Ex. F Larkins ¶10, ex. 1 GCSD000782-GCSD-000786; Ex. A Plaintiff 101:7-20)

Response: Denied. Larkins' unsatisfactory rating was due, in part, to the March 16, 2021 incident (Byrd depo.at p.101).

38. On June 10, 2021 Plaintiff conducted Aaron Maharaj's final performance review and for the first time, Maharaj received an "improvement needed" rating. (Ex. G Maharaj ¶12).

Response: Admitted.

39. On June 11, 2021, Larkins contacted the District's Department of Equity and Compliance raising concerns of unfair treatment and retaliation as to his evaluation. (Ex. F Larkins ¶11)

Response: Denied. Larkins contacted Michelle Burton by phone and by email (Batiste depo.Ex.15).

40. Michelle Burton is a Director of Internal Resolution and Compliance, Title IX for GCSD. (Ex. A Plaintiff 96:8-9, 96:23-97:3)

Response: Admitted.

41. Ms. Burton initiated an internal investigation into Larkins' workplace complaint regarding his performance review. (Ex. A Plaintiff 97:4-10, 98:16-99:3)

Response: Admitted.

42. Burton first met with Plaintiff on June 16, 2021, to discuss the Larkins' complaint. (Ex. A Plaintiff 94:2-22)

Response: Admitted.

43. Plaintiff felt as if Burton had her "own narrative" that she was trying to accomplish, but has "no idea" why she would have a particular narrative. (Ex. A Plaintiff 102:18-104:1)

Response: Admitted.

44. On July 1, 2021 Plaintiff met with Burton and Batiste to review the findings of the Larkins investigation. (Ex. A Plaintiff 202:5-10)

Response: Admitted.

45. Also in June of 2021, Maharaj, Brown, and Oliver made separate complaints regarding Plaintiff and their employee job assessments. (Ex. A Plaintiff 152:10-19; Ex. C Brown 32:19-23, 35:14-19; Ex. G Maharaj ¶13; Ex. H Oliver ¶10)

Response: Admitted.

46. Dr. Monica Batiste (African-American) sat in on Plaintiff's interviews with Ms. Burton in response to Plaintiff's request for a different investigator. (Ex. A Plaintiff 152:20-153:12; Ex. B Batiste 129:18-24

Response: Admitted.

47. Plaintiff had multiple meetings with Burton and Batiste regarding the investigation and Plaintiff submitted multiple pages of documents to be considered related to the performance reviews. (Ex. A Plaintiff 182:22-183:9)

Response: Objection: This statement contains multiple compound statements which are not cumulatively supported by the references cited by the Defendant. Plaintiff admits that he had multiple meetings with Burton and "additional" meetings with Batiste (Byrd depo.p.182-183). Plaintiff submitted multiple pages of documents regarding the performance reviews only (Id.).

48. On August 10, 2021, Burton and Batiste met with Plaintiff to review the findings of the internal investigation; Plaintiff recorded that meeting. (Ex. A Plaintiff 187:7-12, 200:16-20)

Response: Admitted.

49. Burton concluded that Plaintiff had engaged in unfair treatment and/or retaliation as it pertained to the employees' performance evaluations; she made several recommendations including that Plaintiff receive a letter of direction. (Ex. A Plaintiff 202:6-203:24, ex. 24; Ex. B Batiste, ex. P-10, P-11, P-14).

Response: Denied. The findings recommended by Burton and accepted by HR Director Batiste was that Plaintiff retaliated against Larkins for changing his management style,

and that he engaged in "unfair treatment" with regard to the three other subordinate employees (Batiste depo.p.206).

50. Mr. Gomez, Plaintiff's supervisor did not participate in the investigation, its findings, or the decision to issue Plaintiff a letter of direction. (Ex. D Gomez 105:15-24).

Response: Denied. Gomez met with Associate Superintendent Batiste and the Defendant's attorney, regarding the investigation, reviewed the investigation findings, and agreed with the findings he issued (Gomez depo.pp.106-107, 245-246, and 251-252).

51. Plaintiff did not report to work from July 22, 2021 to August 3, 2021. (Ex. A Plaintiff 188:9-189:15, ex. 20, 21)

Response: Admitted.

52. Following completion of the investigation, Gomez met with Larkins, Maharaj, Oliver and Brown and reiterated that Byrd was their supervisor. (Ex. F Larkins ¶12; Ex. H Oliver ¶ 12; Ex. G Maharaj ¶14).

Response: Plaintiff currently has no information upon which to admit or deny this allegation.

53. On August 24, 2021, Gomez met with Plaintiff to provide him the letter of direction. (Ex. A Plaintiff 202:16-21, ex. 24)

Response: Admitted.

54. Plaintiff's letter of direction was specifically related to the four performance evaluations. (Ex. A Plaintiff 203:7-204:4).

Response: Objection: This statement contains an allegation which is not supported by the references cited by the Defendant. Denied. The Letter of Direction issued to the Plaintiff related to the four performance evaluations, the Letter of Direction caused to be issued by the Plaintiff to Grady Brown, Plaintiff's decisions regarding time and attendance rules with regard to Grady Brown, and instructions to Plaintiff regarding how he was to interact with subordinate employees and to carry out his duties as a supervisor, among other matters (Gomez depo.Ex.21).

55. First, Plaintiff was given a "reasonable directive to an employee" to "refrain from all written and oral communication that may be construed as demeaning, sarcastic, and intimidating in nature as well as refrain from any conduct that may lend itself to future claims of retaliation." (Ex. A Plaintiff 204:18-205:15, ex. 24).

Response: Objection: This statement contains an allegation which is not supported by the references cited by the Defendant. Denied (Byrd depo. & Errata pp. 204-205).

56. Second, Plaintiff was directed not send emails from somebody's email account that was not his own, which he had admittedly done on more than one occasion. (Ex. A Plaintiff 205:16-207:13, ex. 24).

Response: Admitted.

57. Third, Plaintiff was directed to "refrain from requesting employees to complete personal errands on your behalf and distribute all GCPS errands among employees in an equitable manner consistent with their job duties and responsibilities" in response to the March 16 incident involving Larkins. (Ex. A Plaintiff 207:14-208:12, ex. 24)

Response: Objection: This statement contains compound statements which are not cumulatively supported by the references cited by the Defendant. Plaintiff admits that he had multiple meetings with Burton and "additional" meetings with Batiste (Byrd depo.p.182-183).

58. Fourth, Plaintiff was directed to "interact with all GCPS stakeholders, including your direct report employees, to perform your duties and responsibilities in a professional and courteous manner" which Plaintiff admits is not an improper directive from an employer. (Ex. A Plaintiff 210:25-211:10, ex. 24)

Response: Objection: This statement contains compound statements which are not cumulatively supported by the references cited by the Defendant. The Plaintiff stated that this directive had no legitimate basis for him (Byrd depo.p.111:9-10).

59. Fifth, Plaintiff was directed to "perform evaluations that reflect current years performance and never base evaluations on retaliatory motives." (Ex. A Plaintiff 211:11-20, ex. 24)

Response: Admitted.

60. During the meeting in which Gomez presented the letter of direction to Plaintiff, Gomez told Plaintiff, "I still need you to be a supervisor, I still need you to be the leader of the department." (Ex. A Plaintiff 213:15-25)

Response: Admitted.

61. Two days letter, Plaintiff submitted his resignation on August 26, 2021 via email to Jorge Gomez. (Ex. A Plaintiff 237:6-20, ex. 27)

Response: Admitted.

62. Plaintiff stated that he was resigning because with his many accomplishments, he believed the time for change had come. (Ex. A Plaintiff 237:6-16, ex. 27).

Response: Objection: This statement contains an allegation which is not supported by the references cited by the Defendant. In fact, Plaintiff stated that the recent events which occurred were the motivating factor for his resignation (Byrd depo.Ex. 27).

63. Plaintiff stated it was a "privilege to work under your tutelage for the past 14- plus years" regarding Mr. Gomez which he indicated he meant at that particular point in time. (Ex. A Plaintiff 238:2-239:1)

Response: Denied. Plaintiff's testimony was that this statement in his resignation letter was professional courtesy and needed to obtain a positive reference (Byrd depo.p. 238:19-22).

64. Plaintiff admits that no one asked him to resign, and in fact, Gomez reiterated to him that he was a valuable employee and he still needed him on the team. (Ex. A Plaintiff 163:8-15)

Response: Objection: This statement contains compound allegations which are not supported by the references cited by the Defendant. The Plaintiff stated that he was forced to resign (Byrd depo.p.163:10-11); additionally, Plaintiff testified that Gomez stated (not "reiterated") that he still needed him, though Plaintiff questioned the veracity of Gomez's statement (Id., p. 163:15).

65. Approximately two weeks prior to Plaintiff resigning, Larkins observed that items were removed from the walls in Plaintiff's office, that Plaintiff and Karoline Beard had a large green bin cleaning out papers and were in general emptying Plaintiff's office. (Ex. F Larkins ¶13)

Response: Admitted that this is the statement of Larkins; Denied that this is a material fact, or in fact that this occurred. Karoline Beard, who was retiring, had a large bin cleaning out her overflow items stored in Plaintiff's office during this time period (see the attached Ex.1 at ¶ 58).

66. On January 12, 2022, Gomez was contacted by Rhonda Allen for a professional reference for Plaintiff. (Ex. E Allen 48:22-24).

Response: Admitted.

67. Ms. Allen characterized Mr. Gomez's reference as very positive. (Ex. E Allen 48:25-49:4).

Response: Denied. Ms. Allen stated that it was a positive reference "...with the information that he was allowed to provide to me."  (Allen depo.p.49:l.2-4). Jorge Gomez, however, misrepresented that he was not allowed to provide any other information, as, in fact, Gomez was allowed to provide all reference information which Allen was seeking (Batiste depo.p193:7-23).

68. Mr. Gomez has not been contacted by any other employer to provide a reference for Plaintiff and has not provided any reference regarding Plaintiff to any other potential employer. (Ex. D Gomez 254:10-19.)

Response: The Plaintiff currently has no information upon which to admit or deny this allegation.

69. On June 25, 2021 Plaintiff sent an email cc'ing Gomez and Burton which included reference to an allegation of harassment involving a contracted employee with the initials "LM." (Ex. A Plaintiff 112:16-20, 113:10-15)

Response: Admitted.

70. Mr. Gomez called a meeting on that same day, June 25, 2021, in response to Plaintiff's email. (Ex. A Plaintiff 118:1-6)

Response: Admitted.

71. Subsequently, Ms. Burton asked Plaintiff via email to provide information on the specific allegation regarding LM. (Ex. A Plaintiff 122:12-20, ex. 16)

Response: Admitted that, on July 1, 2021, Burton requested, via email, additional information from the Plaintiff – which Plaintiff responded to on the same date (Byrd depo.ex16).

72. Plaintiff was not sure if the alleged harassment was "sexual" or not, writing "sexual?" in his email correspondence. (Ex. A Plaintiff 122:21-123:16, ex. 16)

Response: Admitted that Plaintiff did not know if the harassment was the legal definition of "sexual." (See the attached Ex.1 at ¶ 59).

73. At the direction of Dr. Monica Batiste, Dr. Michele Smith, Executive Director of Internal Resolution, Title IX and Joyce Spraggs, Director of Internal Resolution,  Title IX and Brittany Sebastian, Director of Internal Resolution investigated the allegations regarding LM. (Ex. B Batiste 147:3-11, 148:11-17; Ex. C Brown 66:24- 67:1, 69:11-20; Ex. H Oliver ¶11).

Response: The Plaintiff currently has no information upon which to admit or deny this allegation.

74. Plaintiff had a conversation with Joyce Spraggs and Michele Smith regarding what he knew about the "sexual harassment allegation and that they were conducting the investigation;" Joyce Spraggs contacted Plaintiff regarding when Grady Brown and

Terry Oliver would arrive at work so she could meet with them. (Ex. A Plaintiff 245:25-246:14)

Response: This compound statement is denied in part and admitted in part. Plaintiff denies that that there was a conversation about what he knew about the sexual harassment allegation, as Plaintiff described this as "not a real discussion." (Byrd depo.pp.245-246. See also  the attached Ex. 1 at ¶ 60). Plaintiff admits the remaining parts of this statement.

75. Plaintiff was aware that Mr. Brown met with Ms. Spraggs. (Ex. A Plaintiff 246:15-17)

Response: Admitted.

76. Plaintiff stepped outside the scope of his job and attempted to investigate the LM complaint on his own, including meeting with the complainant twice and taking her statement. (Ex. A Plaintiff 137:19-138:1)

Response: Denied. It is the responsibility of all school district officials to address allegations of sexual harassment in the workplace (Gomez depo.p.200 and Batiste Ex.P-1 at p.25).

77. Dr. Batiste told Plaintiff that the LM complaint should be addressed between human resources and LaCosta's human resources department. (Ex. A Plaintiff 218:22-219:22)

Response: Denied. Dr. Batiste said that the school district was not responsible for LM, stating to the Plaintiff (after Plaintiff presented to her a written statement by LM

describing details of her allegations) "But you gave me a statement, she needed to go back when she comes to you because she is a LaCosta employee, you need to send her back to LaCosta." Additionally when Plaintiff told Batiste that he felt he needed to protect the young lady (from School District's employees' sexual harassment of LM), Batiste told the Plaintiff that it was not his job to protect LM (see the attached Ex. 9 at p.3).

78. Plaintiff was not given a letter of direction regarding how he handled the LM complaint. (Ex. A Plaintiff 136:3-22)

Response: Admitted.

79. Plaintiff did not make any disclosures regarding noncompliance with the FLSA. (Ex. D Gomez 70:15-23)

Response: Denied. Plaintiff disclosed to his supervisor that FLSA was not being adhered to by his subordinate employees, and that their schedule needed to change to comply with FLSA by having employees work two (2) hours during the weekend and 38 hours during the weekday (Gomez depo.pp. 71:16-72:1and 77:11-78:23, Gomez depo.Ex.7 at p.3, and see the attached Ex.1 at ¶ 61).

80. Plaintiff's primary job duties did not change; a comparison of Plaintiff's 2007 job description assessment and his August 24, 2021 job description assessment reflect nearly identical and commensurate duties. (Ex. A Plaintiff 220:14-224:8, ex. 2, 25)

Response: Denied. Plaintiff's job duties changed (Byrd depo.at p.20.l.25-p.21, l.15).

Additionally, Plaintiff's primary job duties are found in his job description (see the

attached Ex.1 at ¶ 62 and see the attached Ex.7). Plaintiff's job duties changed adversely.

As of July 1, 2021 and continuing until his constructive discharge of August 26, 2021,

Plaintiff could no longer complete several components of his job, as he could not

"provide administrative leadership and oversight of all activities" at his work location,

or "Direct the activities of the security monitor personnel," or "Plan and implement

appropriate emergency and safety procedures" at his work location, as directives were

issued by Jorge Gomez and Monica Batiste that he was no longer able to communicate

to employees in a manner which allowed him to "Provide administrative leadership and

oversight," or to direct the activities of security personnel. Directives were also issued

by Gomez and Batiste that Plaintiff's July 8, 2021 Letter of Direction to Grady Brown

would be rescinded, that he no longer would be able to schedule employees to work six

(6) days consisting of working 38 hours during the week and two hours on the weekend

to comply with FLA non-overtime rules, that he could not request that David Larkins go

offsite in the security vehicle to obtain supplies for a staff function, that he was no

longer able to direct that School District staff communicate through the Contractor on

site manager to protect LM, and that his directive that a camera in the electrical closet –

which deterred sleeping on the job and acted to deter employees from a safety hazard by

entering into a high voltage electrical unit area - were each rescinded(Byrd depo. pp.172 and 197-198 and see the attached Ex.1 at ¶¶ 62- 64).

81. Plaintiff alleges that he was treated unfairly because his supervisor rescinded two of his decisions, even though Plaintiff admits his supervisor had the authority to take the action. (Ex. A Plaintiff 170:24-171:3, 199:17-22, 215:9-14)

Response: Denied. Plaintiff contends that he was subjected to retaliation, discrimination, and unlawful treatment – all of which also constitutes unfair treatment (see the attached Ex.1 at ¶ 65).

82. When referring to "color" discrimination, Plaintiff is distinguishing between the Caucasian skin tone and the black skin tone, and not making a distinction between various skin tones of black individuals. (Ex. A Plaintiff 51:7-23)

Response: Denied. In response to Defendant's counsel's specific question, Plaintiff did not make such a distinction (see the attached Ex.1 at ¶ 66).

83. Plaintiff filed a charge and an amended charge with the Equal Employment Opportunity Commission; Plaintiff did not check the box for "sex" discrimination on either charge or allege sex discrimination in his statement of particulars. (Ex. J)

Response: Admitted.

84. The majority of individuals about whom Plaintiff complains are also African American, including decision makers Burton and Batiste and subordinates Oliver,

Brown, Larkins and Maharaj. (Ex. A Plaintiff 50:25-51:3, 53:11-12, 53:17-20, 96:8- 9;

Ex. F Larkins ¶4; Ex. G Maharaj ¶4; Ex. H Oliver ¶4).

Denied: Plaintiff has named several comparitors in his response to the Defendant's

discovery requests(see the attached Ex.1 at ¶ 67).

    Respectfully submitted this 19th day of April, 2023.


                    J. TAYLOR AND ASSOCIATES, LLC

                    /s/Jacqueline Taylor
                    Jacqueline K. Taylor
                    Georgia Bar No. 700251
                    1870 The Exchange, Suite 200
                    Atlanta, Georgia 30339
                    (770)951-7077(phone)
                    Email: jaktaylor@bellsouth.net

### CERTIFICATE OF SERVICE

    I hereby certify that I have this day served a copy of the within and foregoing

pleading to the Clerk of the Court using the CM/ECF system, which will automatically

send electronic mail notification of such filing to counsel of record who are CM/ECF

participants, and thereby counsel for the Defendant as follows:

                Elizabeth F. Kinsinger
        PEREIRA, KIRBY, KINSINGER & NGUYEN, LLP
                  P.O. Drawer 1250
                Lawrenceville, GA 30046

Dated this 19 th day of April, 2023.

                    /s Jacqueline Taylor
                    Jacqueline K. Taylor